**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | 3:24-cr-27-MOC |
| v. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| CHRISTOPHER PORTER,<br>Defendant. | |

NOW COMES the defendant, Christopher Porter, by and through undersigned counsel, and respectfully submits this memorandum in aid of sentencing, which is scheduled for August 31, 2026. For the reasons set forth below, the defendant requests that the Court impose a sentence of 360 months' imprisonment—thirty years—followed by a lengthy term of supervised release. Such a sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I. INTRODUCTION

Mr. Porter does not minimize the gravity of his offense. He pleaded guilty to producing child pornography in violation of 18 U.S.C. § 2251(a), and he accepts responsibility for the serious harm his conduct caused. Counsel writes not to excuse that conduct, but to place it before the Court alongside the man who stands convicted of it, as § 3553(a) requires. The question before the Court is not whether Mr. Porter will be punished severely—he will be—but what measure of punishment is sufficient without being greater than necessary.

A sentence of 360 months answers that question. It is the term the defense believes is more than appropriate. It will keep Mr. Porter incarcerated until he is roughly sixty-one years old. It will

be followed by a term of supervised release that may extend for the remainder of his life, and by a lifetime obligation to register as a sex offender. It is, by any measure, one of the most severe sentences the federal system imposes short of life. The defense respectfully submits that it is enough.

## II. THE GUIDELINE POSTURE AND THE SENTENCE THE DEFENSE REQUESTS

The Presentence Investigation Report applies USSG § 4B1.5(a), which governs where the instant offense of conviction is a covered sex crime and the defendant has a qualifying prior sex offense conviction. That guideline directs that the criminal history category be not less than V. USSG § 4B1.5(a)(2). The resulting advisory range is 360 months to life. PSR ¶ 99. Because the statutory maximum for the offense of conviction is fifty years (600 months), the effective advisory range is 360 to 600 months. USSG § 5G1.1(c)(1). The statute also fixes a mandatory minimum of 300 months (twenty-five years). 18 U.S.C. § 2251(e). The parties agree that this is the correct calculation.

The sentence the defense requests is therefore a guideline sentence. It sits sixty months above the mandatory minimum and 240 months below the top of the advisory range. The defense does not seek a variance and does not ask the Court to sentence at the statutory floor. It asks the Court to impose the low end of a range that the Probation Office calculated and that both parties accept as correct - a term that accounts for the seriousness of the conduct and for the individual circumstances of the defendant. A sentence within a properly calculated advisory range is presumptively reasonable on appellate review, *see United States v. Montes-Pineda*, 445 F.3d 375, 379 (4th Cir. 2006), and 360 months is a principled and defensible number within it.

Although the guidelines are the starting point, they are not the end of the analysis. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Court must make an individualized assessment

based on the § 3553(a) factors and the facts of this case. Those factors confirm that 360 months is the appropriate sentence.

## III. THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 360 MONTHS

### *A. The nature and circumstances of the offense.*

Counsel does not relitigate the offense conduct, which is set out in the PSR. It is enough to say that the conduct is serious and that the recommended sentence reflects that seriousness. The defense notes only that the offense of conviction—the production of two images in late May 2023—is one piece of a course of conduct that the Government and Probation Office have described at length. Mr. Porter has not contested the factual basis. He has instead chosen to resolve the case by plea, sparing the victim the burden of trial and accepting a term of decades in prison. That choice is itself a meaningful acknowledgment of the harm he caused.

### *B. The history and characteristics of the defendant.*

Section 3553(a)(1) directs the Court to consider not only the offense but the person. Christopher Porter is thirty-one years old. The life that preceded this case was marked by instability, dysfunction, and an almost complete absence of the kind of support that ordinarily helps a young person build a stable adult life.

His parents divorced when he was ten. PSR ¶ 78. As he came to understand only as an adult, both parents abused prescription drugs during his childhood. Id. He bounced between states and households. At sixteen he lived briefly with his mother in North Carolina until she could no longer afford to house him, and he returned to Oklahoma. Id. His older brother physically assaulted him as an adolescent - beating him and, on more than one occasion, holding knives to his throat. PSR ¶ 79. For roughly the last eight years, Mr. Porter has been effectively homeless, living out of

his car. PSR ¶ 78. His employment history is a string of marginal, low-wage jobs—fast-food kitchens, delivery driving, a brief stint as a security guard. PSR ¶¶ 89–91. He completed high school but has no further education. PSR ¶ 87. He attempted military service but was discharged within three months. PSR ¶ 88.

None of this excuses Mr. Porter's conduct, and the defense does not offer it as an excuse. It offers the Court a fuller picture of the person to be sentenced: a young man of limited resources, limited education, and no meaningful history of stability or care, who has now accepted responsibility for a grave offense and faces three decades in prison.

***C. A 360-month sentence reflects the seriousness of the offense, provides just punishment, and promotes respect for the law.***

Thirty years is a profoundly serious sentence. It is difficult to overstate what 360 months means in a human life. Mr. Porter entered custody in his early thirties; he will not leave federal prison until he is in his sixties. The sheer length of the term - decades during which he will be removed entirely from society - reflects the seriousness of the offense and provides just punishment for it. A sentence of this magnitude leaves no room for any suggestion that the law treats the production of child pornography lightly.

***D. A 360-month sentence affords adequate deterrence and fully protects the public.***

The recommended sentence is more than sufficient to deter and to incapacitate. As a matter of specific deterrence and public protection, a thirty-year term of incarceration - followed by a term of supervised release that may extend for the rest of Mr. Porter's life, 18 U.S.C. § 3583(k), and by lifetime sex-offender registration under the Sex Offender Registration and Notification Act, see 34 U.S.C. §§ 20911(4)(C), 20915(a)(3)—constructs an exceptionally durable framework of supervision and restraint. Mr. Porter will re-enter the community, if at all, as an older man subject

to lifelong monitoring. The empirical literature consistently shows that the risk of sexual reoffense declines markedly with age; a defendant released in his sixties presents a materially different risk profile than one released in his thirties.

The Court should also be aware that Mr. Porter faces separate, pending state charges in St. Louis County, Missouri arising from related conduct. PSR ¶ 76. Those charges carry the prospect of additional consequences beyond the sentence imposed here. The federal sentence does not represent the totality of Mr. Porter's exposure, and the Court may consider that the protection of the public will be reinforced by proceedings in another jurisdiction.

Nor is Mr. Porter's release at the expiration of a 360-month term a foregone conclusion. Before releasing him, the Bureau of Prisons will review Mr. Porter for possible certification as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act, 18 U.S.C. § 4248. That review is conducted by the Bureau's Sex Offender Certification Review Panel. See 28 C.F.R. pt. 549, subpt. G; BOP Program Statement 5394.01, Certification and Civil Commitment of Sexually Dangerous Persons (Feb. 1, 2016). If the Bureau finds reasonable cause to believe that Mr. Porter suffers from a serious mental illness, abnormality, or disorder that would render him seriously dangerous to others, see 18 U.S.C. § 4247(a)(5)–(6), it may file a certificate that stays his release and requires a district court to hold a hearing, id. § 4248(a), after which he may be committed indefinitely to the custody of the Attorney General if the Government proves sexual dangerousness by clear and convincing evidence, id. § 4248(d). The Supreme Court has upheld Congress's authority to provide for that commitment. *United States v. Comstock*, 560 U.S. 126 (2010). The defense does not suggest that certification is likely in Mr. Porter's case, and it takes no position now on a question that will be answered thirty years from now on a record that does not yet exist. The point is structural: Congress has already supplied a mechanism for detaining,

past the end of a criminal sentence, precisely those individuals who remain dangerous when their sentences run out. Mr. Porter will be screened under that mechanism as a man in his sixties. If he is then found to be sexually dangerous, the public will be protected regardless of the length of the sentence this Court imposes today. If he is not, the additional years the Court might add today will have purchased nothing that the existing framework does not already provide.

***E. The need to provide treatment and rehabilitation.***

Section 3553(a)(2)(D) directs the Court to consider the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. Mr. Porter has expressed interest in vocational training—welding and HVAC—and in pursuing further education. PSR ¶¶ 86–87. He has likewise expressed interest in Bureau of Prisons programming. A 360-month sentence affords the time and the setting for sex-offender treatment, substance-abuse treatment for his long-standing marijuana use, and vocational training—resources Mr. Porter has not previously had access to.

To serve this statutory purpose, the defense respectfully requests that the Court recommend that the Bureau of Prisons designate Mr. Porter to the lowest-security Sex Offender Management Program (SOMP) facility for which he is eligible, and specifically to the Federal Correctional Institution, Seagoville, Texas. FCI Seagoville is a low-security SOMP facility that offers the Non-Residential Sex Offender Treatment Program (SOTP-NR)—a cognitive-behavioral treatment program for individuals convicted of sexual offenses—as well as a residential substance-abuse program that would address Mr. Porter's history of marijuana dependence and vocational and educational programming consistent with his stated interests. Designation to a SOMP facility is the ordinary course for an individual with Mr. Porter's history, and FCI Seagoville is among the lowest-security facilities offering this treatment.

FCI Seagoville is also the SOMP facility nearest to Mr. Porter's family. His father resides in Cache, Oklahoma, his mother resides in Lawton, Oklahoma, and he remains close to his paternal grandmother, also of Cache. PSR ¶¶ 78, 81. FCI Seagoville sits just outside Dallas, within driving distance of southwestern Oklahoma, while no SOMP facility exists in the Western United States nearer to his family. Maintaining family contact over a sentence of this length serves rehabilitative ends and supports eventual reentry. Should Mr. Porter not be eligible for a low-security facility, the defense requests in the alternative that the Court recommend designation to FCI Englewood, Colorado, also a low-security SOMP facility. While the Court's recommendation as to designation is not binding on the Bureau of Prisons, see 18 U.S.C. § 3621(b), such a recommendation would meaningfully support placement at a facility equipped to provide the treatment contemplated by § 3553(a)(2)(D) and to preserve Mr. Porter's ties to his family.

***F. The need to avoid unwarranted sentencing disparities.***

A sentence of 360 months does not create unwarranted disparity; it avoids it. The recommended term is not a lenient outlier—it exceeds the national average for this offense. According to the most recent data published by the United States Sentencing Commission, the average sentence imposed in fiscal year 2025 on individuals convicted of production of child pornography was 283 months; among the 86 percent of those individuals convicted of an offense carrying a mandatory minimum penalty, the average sentence was 303 months. See U.S.S.C., Quick Facts: Sexual Abuse (FY 2025) (June 2026). A sentence of 360 months thus exceeds the national average for production offenders, including those subject to mandatory minimum penalties. Imposing it places Mr. Porter above the typical production offender—accounting for the aggravating features of his case—while declining the marginal and unnecessary severity of a term approaching the 600-month guideline. Section 3553(a)(6) is concerned with disparities that are

unwarranted, not with uniformity for its own sake. A term that already exceeds the national mean for this offense category does not create the kind of disparity § 3553(a)(6) was written to prevent. Imposing it serves, rather than undermines, that goal.

## IV. MR. PORTER IS INDIGENT AND CANNOT PAY THE STATUTORY ASSESSMENTS

### *A. The $5,000 assessment under 18 U.S.C. § 3014 may not be imposed on an indigent defendant.*

The Presentence Report addresses the additional special assessment created by the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014, and the Government has advised that it intends to seek that assessment. The defense does not dispute that § 3014 reaches offenses under Chapter 110, or that it applies to conduct committed while the provision was in force. Although § 3014(a) as originally enacted expired on September 30, 2025, Congress struck that expiration date, and the provision now operates without a sunset. See Pub. L. No. 119-75, § 5012 (Feb. 3, 2026). The defense's objection is narrower, and it is dispositive: § 3014 reaches only a non-indigent person, and Mr. Porter is indigent.

The statute directs that the court shall assess $5,000 on any non-indigent person or entity convicted of a qualifying offense. 18 U.S.C. § 3014(a). The mandatory language operates only once the statutory predicate is established. The Fourth Circuit has held that a finding of non-indigency is what makes the assessment available at all, and that absent such a finding its imposition exceeds the district court's authority—so much so that the resulting sentence is an illegal one that survives even an appeal waiver. *United States v. Kibble*, No. 20-4106, 2021 WL 5296461, at *2–*3 (4th Cir. Nov. 15, 2021) (per curiam) (unpublished) (reversing and remanding where the district court imposed the § 3014 assessment without finding the defendant non-

indigent); accord *United States v. Shepherd,* 922 F.3d 753, 757 (6th Cir. 2019) (the district court cannot impose the assessment on an indigent defendant).

Mr. Porter is indigent by every measure this record supplies. He has been represented by appointed counsel from his initial appearance through today. He has been effectively homeless for roughly the last eight years, living out of his car. PSR ¶ 78. His employment history consists of marginal, low-wage work—fast-food kitchens, delivery driving, a brief stint as a security guard. PSR ¶¶ 89–91. He completed high school and has no further education, credential, or trade. PSR ¶ 87. He has no property, no savings, and no source of income.

Nor does a sentence of this length leave room for any realistic future capacity to pay. Mr. Porter will spend the next three decades in federal custody, where institutional pay is measured in cents per hour, and he will re-enter the community in his sixties carrying a felony conviction for a sex offense, a registration obligation, a lengthy term of supervised release, and a work history that ended in his early thirties. Whatever the outer bounds of the inquiry into future earning capacity, this is not a case at the margin. Mr. Porter was impoverished before this prosecution began, and nothing about the sentence before the Court gives him any means of ceasing to be.

***B. The assessment under 18 U.S.C. § 2259A should be set at a nominal amount.***

The same facts govern the assessment authorized by the Amy, Vicky, and Andy Child Pornography Victim Assistance Act, 18 U.S.C. § 2259A. Because Mr. Porter stands convicted of a production offense, § 2259A(a)(3) permits an assessment of up to $50,000, as adjusted annually for inflation, id. § 2259A(b). Unlike § 3014, imposition of some assessment under § 2259A is mandatory; the amount, however, rests in the Court's discretion, and § 2259A(c) directs the Court to consider the factors set out in 18 U.S.C. §§ 3553(a) and 3572. Those factors expressly include the defendant's income, earning capacity, and financial resources. 18 U.S.C. § 3572(a)(1). For the

reasons set out above, each of them points the same direction. The defense respectfully requests that the Court set the § 2259A assessment at a nominal amount.

***C. No fine should be imposed, and unpayable assessments would compete with victim compensation.***

For the same reasons, the defense requests that the Court impose no fine. See USSG § 5E1.2(a) (fine required in all cases except where the defendant establishes that he is unable to pay and is not likely to become able to pay); 18 U.S.C. § 3572(a). Mr. Porter does not contest the $100 special assessment mandated by 18 U.S.C. § 3013, and he does not contest restitution ordered under 18 U.S.C. § 2259. He observes only that Congress has ordered these obligations by priority: restitution to victims is satisfied before any § 2259A assessment, 18 U.S.C. § 2259A(d)(2), and a § 3014 assessment is not payable at all until outstanding fines, restitution, and other victim-compensation obligations have been satisfied, id. § 3014(b). Layering assessments Mr. Porter has no means to pay would not advance the compensation of victims. It would stand ahead of nothing and behind everything, and would serve only to attach a debt to a man who will leave prison in his sixties with nothing.

## V. WITHDRAWAL OF OBJECTIONS TO THE PRESENTENCE REPORT

The defendant previously filed written objections to the draft Presentence Report (Doc. 33), including objections to the vulnerable-victim adjustment under USSG § 3A1.1(b), to the obstruction-of-justice adjustment under USSG § 3C1.1, and to the application and articulation of USSG § 4B1.5. By correspondence to the United States Probation Office dated January 6, 2026, with a copy to the Government, undersigned counsel withdrew each of those objections. The defendant confirms that withdrawal here so that the record is clear in advance of the sentencing hearing. He has no remaining objection to the Presentence Report.

The parties further agree that the five-level adjustment under USSG § 4B1.5(b) referenced in paragraph 62 does not apply. By its terms, § 4B1.5(b) operates only in a case in which neither § 4B1.1 nor § 4B1.5(a) applies. Because § 4B1.5(a) governs here, the adjustment under subsection (b) is unavailable, and the Probation Office's calculation is correct. To the extent any earlier filing in this case reflects a different calculation, the defendant does not rely on it.

## VI. CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court impose a sentence of 360 months' imprisonment—the bottom of the advisory range—followed by an appropriate term of supervised release, and that the Court recommend that the Bureau of Prisons designate Mr. Porter to the lowest-security SOMP facility for which he is eligible—specifically FCI Seagoville, Texas, or in the alternative FCI Englewood, Colorado—so that he may participate in sex-offender treatment and substance-abuse treatment while remaining within reach of his family. The defendant further requests that the Court find him indigent for purposes of 18 U.S.C. § 3014 and decline to impose the $5,000 assessment, that the Court set any assessment under 18 U.S.C. § 2259A at a nominal amount, and that the Court impose no fine. Such a sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

Respectfully submitted, this 24th day of August, 2026.

/s/ Steven Slawinski
Steven Slawinski
Assistant Federal Defender - WDNC
NC Bar No. 38956
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 374-0722

Steven_Slawinski@fd.org
Counsel for Defendant